IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
~~NOTHERN~~ *northern* DIVISION

| | |
|---|---|
| **JOHN KEVIN DEAR** | **PLAINTIFF** |
| VS. | CAUSE NO. 3:25cv686-KHJ-MTP |
| **MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY, SEAN TINDELL, AND JOHN DOES 1-10** | **DEFENDANT** |

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

SEP 10 2025

ARTHUR JOHNSTON
BY _____ DEPUTY

**COMPLAINT**
**JURY TRIAL DEMANDED**

COMES NOW, Plaintiff John Kevin Dear, by and through counsel, and files this Complaint to recover back-pay, reinstatement or front pay, compensatory damages, and punitive damages against the Defendants Mississippi Department of Public Safety ("MDPS"), Sean Tindell, and John Does 1-10. This action arises from discrimination, harassment, and retaliation, actionable pursuant to First and Fourth Amendments of the Constitution and violations of the Fourteenth Amendment's Equal Protection and Due Process Clauses, actionable under 42 U.S.C. § 1983.

1. Plaintiff John Kevin Dear is an adult resident of Copiah County, Mississippi, and he served as a law enforcement officer for MDPS from August 5, 2013, until his wrongful termination.

2. Defendant, Mississippi Department of Public Safety (Department) is a political subdivision of the State of Mississippi, headquartered in Jackson, Mississippi. MDPS operates the Mississippi Bureau of Narcotics ("MBN"), where Plaintiff was employed. Defendant may be served with process upon:

   a) The Attorney General, Lynn Fitch, at Carroll Gartin Justice Building, 450 High Street, Jackson, Mississippi, 39201; and

b) The Commissioner of the Mississippi Department of Public Safety, Sean Tindell, at 1900 East Woodrow Wilson Avenue, Jackson, Mississippi, 39216.

3. Defendant Sean Tindell, in his individual and personal capacities, alleging he acted under the color of state law to violate Plaintiff's constitutional, statutory and common law rights, is an adult resident citizen of Mississippi. He may be served with process by service of a Summons and Complaint upon him at 222 Port Arthur, Brandon, MS 39047, or at 1900 East Woodrow Wilson Avenue, Jackson, Mississippi, 39216.

4. Defendants John Does 1-10, in their individual and personal capacities, alleging they acted under color of state law to violate Plaintiff's constitutional, statutory and common law rights, are those other persons, firms, corporations or other entities whose wrongful conduct, caused or contributed to the injuries and damages of the Plaintiff, all whose true and correct names are unknown to the Plaintiff at this time, but will be joined by amendment when ascertained.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights jurisdiction), and 42 U.S.C. § 1983 for claims arising under Title VII of the Civil Rights Act of 1964, as amended, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

6. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred within the Southern District of Mississippi, Northern Division.

## FACTUAL BACKGROUND

7. Plaintiff was hired by Defendant on or about August 5, 2013, as a narcotics officer for the Mississippi Bureau of Narcotics (MBN).

8. Throughout his employment, Plaintiff consistently performed his duties at a level equal to or exceeding the performance of his counterparts. Despite his qualifications and dedication, Plaintiff was systematically denied opportunities for advancement and subjected to adverse and retaliatory treatment by the Defendants. Despite his qualifications and performance, the defendants made the working conditions so intolerable that the Plaintiff reasonably felt compelled to resign. These conditions, brought on by the Defendants, would have caused any reasonable person in the Plaintiff's shoes to feel compelled to resign.

9. These intolerable conditions began in approximately August of 2022, when the Plaintiff, through the MBN, was assisting Hinds County Law Enforcement execute a search warrant and when Agent James Reagan negligently discharged his weapon at a dog on the premises within three to four feet of the Plaintiff. All or part of the bullet struck the Plaintiff in the right leg causing damage and severe hearing loss. MBN did not call for medical assistance or offer any medical help, and Plaintiff drove himself to the doctor's office only after receiving permission from MBN.

10. The following day, Plaintiff had a conversation with Major Phillip Pope regarding what disciplinary action the agency would be taking against Agent Reagan for negligent discharging of his weapon. During this conversation, Major Pope became angry and began yelling at the Plaintiff. Ultimately, no disciplinary action was taken against Agent Reagan. Despite being shot by Agent Reagan, the Plaintiff was forced to continue to work alongside Agent Reagan after the incident.

11. Several months later towards the end of 2022, while executing warrants in Jackson, MS, a suspect attempted to flee, and the Plaintiff successfully apprehended the suspect, but received injuries in the process. The Plaintiff injured his hand and lower back and as a result filed a workman's compensation claim. Plaintiff was diagnosed with a strained hand and a torn disc in his back. Plaintiff explained to Lieutenant Britt Johnson that he was recovering and not at one-

hundred percent; Lieutenant Johnson responded saying the Plaintiff needed to get to work and make more cases.

12. In January of 2023, Plaintiff requested time off or leave, which he had accrued through his years with the MBN. The Plaintiff intended to run for Sheriff of Copiah County, Mississippi and made this clear in his request for leave. He received verbal permission granting the leave and authorizing his request to run for office from Steve Maxwell. Plaintiff began using leave and ordered campaign signs, only to be told afterwards that he could not run for Sheriff. Mississippi Bureau of Narcotics told the Plaintiff to send a memo to the Commissioner requesting permission to run for Sheriff again. Plaintiff complied and sent the memo as directed and waited months with no answer, but was told he could not campaign until he had received permission from the Department. During this time, Plaintiff was continuing to use his leave time while waiting for the Department's approval. While waiting, Plaintiff was called on the phone by Phillip Pope, who accused the Plaintiff of campaigning and was threatened to fire the Plaintiff if he was caught. Approximately six weeks before the primary election, the Department approved the Plaintiff's request to run for Sheriff, but it was too late in the election to effectively campaign. The Plaintiff expended money for his campaign and used extensive leave time because of the Department's actions.

13. After the primary election, the Plaintiff returned to work in August of 2023 with the work conditions only worsening. Major Phillip Pope would regularly make inappropriate sexual comments to the Plaintiff about the Plaintiff's wife. On one such incident on or about October 18, 2023, Major Phillip Pope called the Plaintiff and stated that if the Plaintiff was not able to handle his wife right now because of his injuries that he, Major Phillip Pope, could handle her for the Plaintiff and would take her out on dates until the Plaintiff recovered. In December of 2023 at Sonny's barbecue Major Phillip Pope learned that Plaintiff and his wife were going on vacation and commented that he may have to cancel the Plaintiff's vacation leave and that he, Major

Phillip Pope, would take the Plaintiff's wife on vacation. Major Phillip Pope went on to tell the Plaintiff not to worry because he would take of the Plaintiff's Wife and take care of her, implying that he would take care of her sexually. Again, in Early 2024, Plaintiff was purchasing a compound bow for his wife from Major Phillip Pope, while Major was on duty. During this transaction, Major Phillip Pope commented that he knew the Plaintiff's back was still injured and if he needed to teach the Plaintiff's wife how to use the bow he could and could take care of other business with her, implying yet again that he would take care of Plaintiff's wife sexually.

14. In January or February of 2024, Steve Maxwell was replaced as director by Phillip Pope. In February of 2024, Plaintiff received a call about coming to an off-site secret meeting at night. Present at the meeting were Agents Drew Decker, Stephen Wray, Beverly Evans and Director Phillip Pope. It became clear the meeting was designed to gather or create negative information regarding Captain Kenneth Blanford. At the conclusion of the meeting, Director Pope directed the individuals present to write a memo about Captain Kenneth Blanford containing negative information. The Plaintiff, not wanting to write the memo, contacts Director Phillip Pope on or about February 21, 2024, and request to meet with him. The Plaintiff requested to meet with Director Phillip Pope several more times but to no avail. The Plaintiff refused to write the memo as Director Phillip Pope directed. On or about March 15, 2024, at Director Pope's direction, Beverly Evans requested said memo from the Plaintiff and soon thereafter Lieutenant Britt Johnson, who was not present for the meeting, requested the document from the Plaintiff. Once it was clear that the Plaintiff had refused to write the memo the harassment in the workplace reached new heights. Director Phillip Pope accused the Plaintiff of being insubordinate and would hardly speak to the Plaintiff, while the three individuals that wrote the report received promotions and or more desirable positions. Around this time Director Pope confronted the Plaintiff regarding if other agents had mentioned anything about Director Pope and Agent Evans.

When the Plaintiff responded that he wanted nothing to do with anything involving Director Pope and Agent Evans, Director Pope became angry at the Plaintiff.

15.   As work continued, Plaintiff took note that the MBN was conducting unconstitutional stops that appeared to be based on race as opposed to any probable cause. On one such occasion, the Plaintiff along with other officers were at a gas station and he hears Lieutenant Britt Johnson say "Do y'all see the black guy at pump number 2, he looks like a good one. Y'all box him in". These unconstitutional stops were occurring more and more frequently and would commonly occur at gas stations.  In 2024, the Plaintiff had pulled into a Texaco at the intersection of Hwy 80 and Shaw Road after other agents had the area secured with several individuals in handcuffs. Lieutenant Britt Johnson approached the Plaintiff and advised him that this would be his case and that the Plaintiff would sign the affidavit on the suspects. The Plaintiff advised Lieutenant Britt Johnson that he would not because he did not have firsthand knowledge of the probable cause for the stop, or who was in possession of the illegal substances. This refusal angered Lieutenant Britt Johnson and the Plaintiff was told that Lieutenant Britt Johnson wanted to write the Plaintiff up for insubordination.

16.   At a subsequent MBN JDO/HIDTA meeting, which included the Plaintiff, other division agents and Lieutenant Britt Johnson, Plaintiff expressed his concerns about these unconstitutional and racially driven stops and stated that they need to stop. Lieutenant Britt Johnson visibly became angry at this meeting with the Plaintiff for addressing the unconstitutional and racially driven stops. The harassment by Lieutenant Britt Johnson became worse and the Plaintiff was obviously being targeted by Lieutenant Britt Johnson and other agents would not communicate with the Plaintiff.

17.   The harassment by Lieutenant Britt Johnson became worse and the Plaintiff was obviously being targeted. On one such occasion, Plaintiff assisted Lieutenant Britt Johnson with the changing of a flat tire during working hours. When assisting in this process, Plaintiff noticed

that Lieutenant Britt Johnson had three sawed off shotguns in the trunk of his car. Plaintiff has first-hand knowledge that those three shotguns were seized by Lieutenant Britt Johnson approximately ten months prior. Plaintiff questioned Lieutenant Britt Johnson as to why he still had possession of the guns and why they had not been logged into evidence, but Lieutenant Britt Johnson didn't respond. In July 2024, with the harassment reaching new heights, Agent Dear contacted Internal Affairs. During this phone call, the Plaintiff explained his situation and his concern over the continued harassment by agents and his supervisor, the unlogged evidence in Lieutenant Britt Johnson's possession, and the unconstitutional and racially driven arrests. Despite contacting Internal Affairs, the Plaintiff's situation did not improve.

18.     In August of 2024, Plaintiff informed Director Phillip Pope of Lieutenant Britt Johnson's harassing behavior towards the Plaintiff. Plaintiff also reported that Lieutenant Britt Johnson had failed to log the three sawed off shotguns into evidence. Despite the Plaintiff reporting Lieutenant Britt Johnson's behavior to Director Phillip Pope, the Plaintiff is unaware of any action taken against the Lieutenant. While the conditions in the workplace only worsened for the Plaintiff, Lieutenant Britt Johnson received a promotion.

19.     As a result of the intolerable work conditions, Plaintiff began having health issues. Plaintiff went to his health care provider and was told that his blood pressure was nearly at stroke level and was prescribed anxiety medication and blood pressure medication. Prior to this Plaintiff did not have a history of anxiety or high blood pressure.

20.     Around this time, MBN advertised for an available Lieutenant position, Plaintiff applied and interviewed for the position. At this point the Plaintiff had close to 23 years of law enforcement experience and over 10 years' experience as an agent for MBN. The Plaintiff was passed over and the position ultimately was given to Agent Barry Hollingsworth, who had approximately eight years of law enforcement experience. Plaintiff voiced that he did not think

Agent Hollingsworth was qualified because he did not have the required years of employment with MBN.

21. Shortly after Plaintiff voiced his opinion on Agent Hollingsworth not having the necessary number of years with MBN to receive the promotion to Lieutenant, Plaintiff was removed from HIDTA and reassigned to the Jackson District Office (JDO). Plaintiff contacted Lieutenant Britt Johnson and requested that he not work under Agent Hollingsworth if he were to get the promotion. Lieutenant Hollingsworth was appointed as the Lieutenant for JDO, and the Plaintiff was assigned to work under the individual that was promoted over him, despite his request to the contrary. Additionally, HIDTA agents are allowed to earn or claim over $20,000.00 in overtime each year, so being removed from HIDTA and placed in JDO cost the Plaintiff approximately $20,000.00 in potential overtime. This relegation was nothing but harassment and retaliation by MBN against the Plaintiff.

22. In August of 2024, Plaintiff located a GPS tracking device on his work vehicle. This device was clearly put on the vehicle by the MBN. There has been no indication this was done pursuant to a warrant or court order, and it is not in the MBN policy to track their fleet or company vehicles. The device was placed on the vehicle to track the Plaintiff, which is gross violation of his Constitutional rights. The Plaintiff was also followed by a MBN Meridian agent and believes this was at the instruction of MBN.

23. The Plaintiff had refused to write a memo against Kenneth Blanford at the direction of Director Phillip Pope, the Plaintiff refused to be a part of and reported the unconstitutional and racially charged stops, the Plaintiff reported Lieutenant Britt Johnson's behavior of harassment and failure to properly log three sawed off shotguns into evidence. During this time, Plaintiff endured Major Phillip Pope's numerous sexual remarks towards his wife, workplace harassment by Lieutenant Britt Johnson, being passed over for a promotion in favor of a less experienced agent and finally having his every move being tracked by MBN.

24. On September 11, 2024, the Plaintiff was called into the Mississippi Bureau of Narcotics office where he met Lieutenant Barry Hollingsworth and Lieutenant Britt Johnson. During the conversation, Plaintiff was told that he had to get in their vehicle and accompany them to Department of Public Safety Internal Affairs. Plaintiff responded that he would drive himself to Internal Affairs, and Lieutenant Britt became aggravated and demanded that he ride with him. Despite the Plaintiff's repeated offer to meet them at internal affairs, the agency was adamant that they transport the Plaintiff and refused to allow the Plaintiff to drive himself. The conversation escalated, with the Plaintiff confronting Lieutenant Britt about the harassment he had endured. Ultimately, Plaintiff removed the GPS tracker from his work vehicle and set it on the hood in the view of Lieutenant Britt and several other agents.

25. After months of harassment, retaliation and being singled out and tracked by a GPS monitoring device, the Plaintiff felt forced to resign that day. On September 11, 2024, while at MBN headquarters Plaintiff verbally resigned. The Defendants created such a hostile work environment that it was having a severe negative effect on the Plaintiff's physical and mental well-being.

26. Even after submitting his resignation, the Defendants' harassment towards the Plaintiff never wavered. After he resigned on September 11, 2024, the Defendant called a friend, who is also in law enforcement, to come pick him up from MBN headquarters. Lieutenant Britt advised the Defendant that he could not resign until he turned in a resignation letter and forced the Plaintiff to go inside the building in order type and sign a resignation letter, which the Defendant completed.

27. During the September 11, 2024, incident, the Lieutenant Hollingsworth and other agents were taking inventory of MBN issued equipment from the Plaintiffs work vehicle. Defendants told the Plaintiff he could not leave MBN property because he had not turned in his MBN radio and charger. Plaintiff advised the items were at his home and he would retrieve them and have

them returned that day. The Defendants unhappy with that response refused to allow the Plaintiff to leave MBN property. MBN went so far as to tell Plaintiff's friend that he could not leave the premises with the Plaintiff because he had MBN equipment. MBN refused to allow the Plaintiff to leave the fenced in area of their headquarters. MBN's actions resulted in the false imprisonment of the Plaintiff.

28.     Ultimately the Plaintiff was able to leave MBN property with his friend driving him home. Prior to making it to the Plaintiff's home, his friend received a call from his superior at Madison Police Department. Phillip Pope contacted a high-ranking officer with Madison Police Department, advising the officer that one of his employees was transporting the Plaintiff home and the Plaintiff had possession of MBN equipment and that he should be returned to headquarters immediately. Upon receiving this information from his superior in the department, the Plaintiff's friend pulled off of exit 72 off of highway 51 and the Plaintiff exited the vehicle and had a friend pick him up. Once home, the Plaintiff gathered the remainder of his MBN issued equipment and had the same delivered to MBN headquarters that same day.

29.     The Plaintiff has suffered lost income, mental anxiety, high blood pressure, and stress as a result of the Defendant's actions.

## CAUSES OF ACTION

### COUNT I- VIOLATION OF RIGHT TO FREE SPEECH

30.     Defendants, Mississippi Department of Public Safety, Sean Tindell, and John Does 1-10, violated the Plaintiff's right to exercise his right of free speech, which is protected under the Freedom of Speech clause of the First Amendment of the Constitution.

31.     The Defendant, Mississippi Department of Public Safety, retaliated against Plaintiff after he spoke out against the unconstitutional stops, reporting a superior for failing to properly log evidence and refusing to write a false memorandum.

32. After speaking out, the Defendant retaliated against the Plaintiff by accusing him of being insubordinate, thwarting his campaign efforts for public office, passing him over for promotions, and ultimately creating conditions that led to his resignation.

33. These individual Defendant's actions were intentional, malicious, and in reckless disregard of Plaintiff's constitutional rights.

34. As a direct result of these constitutional violations, Plaintiff suffered damages, including lost income, emotional distress, and harm to his career.

## COUNT II- VIOLATION OF RIGHT TO ASSOCIATE

35. Defendants, Mississippi Department of Public Safety, Sean Tindell, and John Does 1-10, violated the Plaintiff's right to associate, which is protected under the Freedom of Association clause of the First Amendment of the Constitution.

36. The Defendant, Mississippi Department of Public Safety, violated the Plaintiff's rights after he spoke out against the unconstitutional stops, reporting a superior for failing to properly log evidence and refusing to write a false memorandum.

37. After speaking out, the Defendant retaliated against the Plaintiff thwarting his campaign efforts for public office.

38. These individual Defendant's actions were intentional, malicious, and in reckless disregard of Plaintiff's constitutional rights.

39. As a direct result of these constitutional violations, Plaintiff suffered damages, including lost income, emotional distress, and harm to his career.

## COUNT III- VIOLATION OF RIGHT TO PRIVACY

40.     Defendants, Mississippi Department of Public Safety, Sean Tindell, and John Does 1-10, violated the Plaintiff's right to privacy, including the right to be free from illegal searches, which is protected under the Fourth Amendment of the Constitution.

41.     The Defendant, Mississippi Department of Public Safety, violated the Plaintiff's right to privacy, including the right to be free from illegal searches, by tracking the Plaintiff's movements via a GPS tracking device.

42.     These individual Defendant's actions were intentional, malicious, and in reckless disregard of Plaintiff's constitutional rights.

43.     As a direct result of these constitutional violations, Plaintiff suffered damages, including lost income, emotional distress, and harm to his career.

## COUNT IV-SECTION 1983 VIOLATION (EQUAL PROTECTION CLAUSE)

44.     Defendants, Mississippi Department of Public Safety, Sean Tindell, and John Does 1-10, in their induvial capacities and acting under color of state law, deprived Plaintiff of his rights under the Equal Protection Clause of the Fourteenth Amendment by subjecting him to discrimination and harassment.

45.     These individual Defendants violated Plaintiff's Fourteenth Amendment right to equal protection by intentionally subjecting Plaintiff to retaliation and harassment for exercising his First Amendment Right to Free Speech and Freedom of Association and violating his right to privacy by tracking his movements via GPS device.

46.     These individual Defendants are liable to Plaintiff for violating his equal protection right to be free from the First Amendment retaliation and the Fourteenth Amendment violations.

47.     These individual Defendant's actions were intentional, malicious, and in reckless disregard of Plaintiff's constitutional rights.

## COUNT V- FALSE IMPRISONMENT

48.     Defendants, Mississippi Department of Public Safety, Sean Tindell, and John Does 1-10 in their capacities and acting under the color of state law, falsely imprisoned the Plaintiff on September 11, 2024.

49.     These individuals Defendants falsely imprisoned the Plaintiff on September 11, 2024, when they repeatedly refused to allow the Plaintiff to leave the fenced in area of the MBN headquarters.

50.     These individual Defendants actions were intentional, malicious, and in reckless disregard if Plaintiffs rights.

51.     As a direct result of these constitutional violations, Plaintiff suffered damages, including lost income, emotional distress, and harm to his career.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1. Actual damages in an amount to be determined by a jury.
2. Lost wages and benefits, including back pay.
3. Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non- pecuniary losses;
4. Reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.
5. For Section 1983 Claims Plaintiff seeks punitive damages against the individual Defendants Sean Tindell and John Does 1-10 to deter future violations of constitutional rights.
6. Punitive damages for state law claims against all Defendants.

Plaintiff requests such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated this is the 10 day of September 2025.

Respectfully submitted,

John Kevin Dear

By: _____
Price D. Henley

Price D. Henley
Price D. Henley Law Firm, PLLC
141 Caldwell Dr. Hazlehurst, MS 39083
P.O. Box 1260
Email: pdhenley@gmail.com
Telephone: 601-623-9155

STATE OF MISSISSIPPI
COUNTY OF COPIAH

    PERSONALLY appeared before me, the undersigned authority in and for the county and state aforesaid, the within named, John Kevin Dear, who having been duly sworn, states on oath that the allegations and averments contained in the forgoing Complaint are true and correct as therein stated.

                                                John Kevin Dear

SWORN to and subscribed before me, this the 10 day of September, 2025.

                                                NOTARY PUBLIC

My Commission Expires:

Nadia Monette Byrd
Notary Public State of Mississippi
Copiah County
Notary ID# 335704
My Commission Expires 8/30/2026